Case 15-1139, et al., Emera Maine, formerly known as Bangor Hydroelectric Company, et al., Petitioners, the Federal Energy Regulatory Commission. Mr. Adkins for Petitioners Emera Maine, Mr. Marshall for Petitioners Nesko, Ms. Banta for Respondent, and Mr. Mezina for Interviewer. Mr. Adkins for Petitioners Nesko, Ms. Banta for Interviewer. Good morning, Your Honors. May it please the Court, I am Sean Adkins on behalf of Transmission Owners. With me are my colleagues, Ken Jaffe and Ambria Watts. The two sets of petitioners in this case were allocated 15 minutes for oral argument. We've elected to divide that evenly, seven and a half each, and I reserve one minute for rebuttal. Unlike other cases that this Court and the 7th Circuit considered related to rights of first refusal under Order 1000, in this case the Commission recognized that Mobile Sierra applies to the contract rights in question. So the question presented to this Court for the first time is whether FERC properly applied Mobile Sierra in abrogating those contract rights. In the Order 1000 rulemaking, FERC found that the record was not sufficient to address Mobile Sierra contract-specific issues. FERC said that it needed a polar record on compliance to address those issues. In this case, FERC ignored that polar record, ignored additional evidence that came in the compliance proceedings. FERC claims to have made a Mobile Sierra finding and even pays lip service to this Court's decision in Texaco. But FERC disregarded this Court's directive in Texaco that a Mobile Sierra public interest finding requires more than a simple reference to the policies to be advanced by a rule. Instead, FERC simply repackaged its Order 1000 findings and records and relied solely on that. Critically, FERC ignored evidence submitted by a neutral party, a not-for-profit independent system operator for New England. ISO New England, which has no financial stake in who builds transmission facilities in the region, and which has been responsible for transmission planning in the region for over a decade, submitted testimony explaining why they had concluded that abrogating the contract's rights would actually increase cost to customers, could lead to delays, could lead to a failure to get needed facilities constructed. This testimony included discussions of New England-specific examples at length. It included illustrative cost impacts. I would direct the Court's attention to Joint Appendix 58 and 65. FERC also ignored evidence and testimony submitted by the transmission owners, which addressed the issue of benefits to consumers under the prior transmission planning regime and the contract rights, specifically laid out evidence of benefits to consumers through collaboration that will be lost if the contract rights are abrogated. Now, when you look at the FERC Orders to see whether or not they've actually addressed any of this evidence, it's important to recall that the way the FERC Orders are structured is there's long portions kind of summarizing what all the pleadings are. But what you really want to look at is the commission determination portions of those orders. So in this case, you would look at Joint Appendix 267 to 283 and Joint Appendix 429 to 441. When you look at those sections in the Mobile Sierra finding, the commission did not address the analysis in the ISO New England testimony or the transmission testimony at all. For example, Mr. Rourke, the ISO New England witness, provided testimony that abrogation of the rights would be expected to delay construction of reliability upgrades by a year or longer. And it pointed out that delays in transmission upgrades could cost hundreds of millions of dollars of impact to customers. It laid out, for example, one example in Massachusetts, where two years of failing to address the transmission constraint resulted in costs of $300 million. So this is just one example. If the requirement in Texaco to make a particularized finding of fact means anything, it must mean that FERC cannot ignore the evidence, the contract-specific evidence, that it invited to be submitted in the compliance proceeding. But that's exactly what FERC did here. And that is the reason why two of the five FERC commissioners dissented from the majority on the Mobile Sierra issue. Commissioner Moeller specifically cited this Court's decision in Texaco and said FERC had not made the particularized finding required by that. Commissioner Clark made the same statement, basically said that the majority decision had not made the granular finding and not addressed the facts necessary to address Mobile Sierra. For this reason, we request that this Court remand the case to FERC, direct them to do the job they have to do under Mobile Sierra to make the particularized finding a fact and fully address the contract-specific evidence in the record and then basically make the right determination. Now we believe that when FERC fully considers the evidence submitted with particular attention to the evidence of the independent ISO, they will find that they cannot meet the standard of showing an unequivocal public necessity of abrogating the contract rights. When they address that evidence, we believe they will see that consumers in New England actually benefit from the contract arrangements and that in fact the additional harm that the independent ISO had identified should not be implemented. So basically all we are asking is that this Court direct FERC to undertake an analysis of the evidence. Now there is precedent which says that an agency must account for evidence in the record that disputes its findings. And it's really notable here that they failed to do that. Again, if you look at the Commission's determination in those sections, they simply don't address this evidence at all. On rehearing, the TOs and the ISO, TOs, transmission owners, both pointed to FERC that they had ignored the evidence. Nonetheless, they just didn't address any of the specific testimony that I referenced in the joint appendix. The one fact that FERC references in rehearing is the fact that there has been approximately $5 billion of transmission bills under the contract regime, an additional $6 billion planned. However, if you read the FERC orders, you would somehow assume that was the only evidence offered in the ISO and transmission owner on the issue of mobile tiara and what public interest requires in New England. A review of the testimony in the record, though, shows that's simply not the case. Now FERC refers to the plenary authority in the Permian Era rate-based cases, and they act as if that statement stands on its own. They failed to acknowledge that the Permian Era rate-based cases also refer to the unequivocal public necessity standard, and that standard, of course, had been affirmed by the Supreme Court in Morgan Stanley. I will acknowledge that there is precedent in this course, which is quite different, and the Seventh Circuit. I particularly would point out that in the Seventh Circuit, although in that case the court found mobile tiara did not apply, they noted, however, that competition is not always good. They noted that, in fact, in theory, someone could submit evidence that competition would increase costs, would have adverse impacts on customers. And in the Seventh Circuit decision, the MISO transmission owner case, the court said, well, none of that evidence was in the record. This case, that evidence is in the record. This case, that evidence was submitted to FERC. FERC invited it to be submitted, and in their orders, they simply did not address it at all. So to make the particularized finding required by Texaco and properly implement mobile tiara, we request that you remand and have them address the evidence. Thank you, Your Honor. Thank you. Good morning. May it please the Court, Jason Marshall for Petitioners in Case Number 15-1141. I'd like to request two minutes for rebuttal. The argument you just heard, Your Honors, concerns one aspect of Order 1000 compliance in New England, and this case concerns a wholly separate issue. Here, FERC has unlawfully expanded Order 1000. FERC has imposed a new requirement regarding the selection of public policy projects, effectuating a change to Order 1000 without observing notice and common procedures in contravention of the Administrative Procedure Act. As a result, the New England states and stakeholders have been deprived of their right to respond to FERC's proposal, and the rules that are currently in effect are fundamentally flawed. This Court can correct this deficiency by first vacating those aspects of the order that unlawfully expand the scope of the rule, and second, by directing that FERC modify its orders to ensure that its orders are in line with the Order 1000 mandate to consider public policies that drive transmission and nothing further. It's critical, Your Honors, that the region be given an opportunity to comply with the Order 1000 mandate and not an expanded version of that order. Your Honors, there appears to be a clear path to resolution in this case. FERC in its brief indicates that, or it seems from their brief, that there is fundamental agreement on the issues that petitioners raise here. In FERC's brief, it appears at least to recognize that Order 1000 does not require the actual selection of projects, and there's a clarity in that brief that is lacking in the underlying orders. In addition, FERC's brief also recognizes that states have a responsibility and an obligation to execute their own laws. It seems like all that's left at this point is for FERC to issue a subsequent order with the effect of law that provides that same level of clarity to the region. Unless the Court has any questions, I'd like to reserve the remainder of my time for rebuttal. All right, thank you. Thank you. Good morning. I'm Carol Banta for the Commission. I'll begin with the public policy requirements. There was nothing in the Commission's brief that wasn't in the orders. We cited to, in the rehearing order paragraphs, not only the controversial sentence in 126, which is on JA-400, but we also discussed the next two sentences in paragraph 126 going over onto JA-401, as well as 127, 128, and 133. There was nothing new in our brief. The Commission in this proceeding rejected, in part, the compliance filing by the ISO as to the public policy, the transmission solutions needs driven by public policy requirements, because the ISO delegated everything to the state's committee. And the Commission said, no, the evaluation needs to be done by the public utility transmission provider, which in a regional transmission organization is the, here, ISO New England. And if something is selected to be put in the plan for cost allocation purposes, the ISO needs to be the one to do it. And the Commission said that over and over in, again, paragraphs 126, 27, 28, and again in 33. I'd also refer the Court to, in the compliance order, I think it's paragraph 108 in particular, is talking about the problem with relying on the committee to select if a selection is to be made. There's nothing in these orders that creates a new requirement that wasn't in 1000. So there's nothing the Court needs to do but affirm in that regard. The Commission said, you're right, we meant who needs to be doing it. We're not saying they have to select something for every transmission need. I would also note that the public, not only is the public policy set by the different states, and to the extent federal public policy is evolved by whatever agencies would do that, the transmission needs in the ISO procedure, the transmission needs driven by those public policy requirements are also identified by the state's committee or the individual states. In Order 1000, the Commission said we're not saying who has to identify the transmission needs for which solutions will be considered. ISO came in and said we would like NESCO, the state's committee, to do that. The Commission actually approved that. I think that's in paragraph 108. It may also be earlier in 67 of the compliance order. So unless the Court has any questions on public policy, I guess I'll move on to the public interest standard. The Commission here, the Commission in Order 1000 did say that it was not going to consider the individual regional claims in the generic proceeding because it did want to have the opportunity to look at everything in the separate proceedings. And it did as they each came up. I mean, this Court has already had the Southwest Power Pool one. The Seventh Circuit has already had the Mid-Continent ISO one. I think the PJM one is pending. In ISO New England, the Commission looked and, as it had in other proceedings, said Mobile Sierra does not apply as a matter of entitlement. But we are looking at your particular agreement that we approved in 2004, and we said we'd give it Mobile Sierra protection, so we will give that here. So that was different than in the other proceedings. And it looked at the findings about the public interest that it made in Order 1000, which is entirely appropriate to do. I'm very much like what happened in Order 888 and the transmission access case. What is your response to Mr. Atkins' claim that FERC did not make particularized findings of that? Well, the Commission, well, it did make particularized findings of fact, but I would argue that Texaco was not about making particularized findings of fact. It was about making particularized determinations of how the plenary public interest finding or the generic public interest finding applies to the contract before it. That doesn't necessarily mean new facts. It does mean looking at this particular contract. So what the Commission said for its particularized findings, I think it's especially encapsulated in I think it's 202, and we're hearing order paragraphs 202 and 204, which is on JA 439 and 440. It said it elsewhere, too, but the particularized analysis was saying we have already decided that it is acutely important to the public interest to introduce competition into the transmission process. That was decided in Order 1000 and affirmed in South Carolina. And with regard to now looking at this particular contract and the right of first refusal, the particularized, again going to paragraph 204, it says the particularized analysis of the manner in which the contract harms the public interest and the extent to which abrogation mitigates the deleterious effect is that this anti-competitive right of first refusal, which is designed to prevent competitive transmission entry to keep incumbent transmission providers in charge of transmission development, it directly negates, it doesn't just implicate the public interest that was so important in Order 1000. It directly negates the Commission rules promulgated for the purpose of protecting the public interest. So having found that competition in the coming massive expansion of the grid, the large amounts of development that are expected to occur throughout the country and factually specifically here in New England as well, the Commission made the decision, the determination in Order 1000 that the public interest acutely requires for the interest of the consumers, the rate payers, making sure that this massive amount of transmission development happens in the most cost-effective, efficient and cost-effective manner possible for the purpose of getting the best ideas, getting the most efficient projects, getting maybe more projects suggested that would serve the public and doing it at just and reasonable rates. Why isn't our decision in Oklahoma dispositive on this question? Well, it certainly is as to whether MobileSphere applies. Well, because in New England... Isn't it the same contract? Aren't we talking about the same thing? Yes. Or am I missing something? Well, not missing... Well, they can say in rebuttal if they think there's something different. But when I read Oklahoma, it sure looks like that's kind of the end of that question. Well, it certainly reflects the Court's understanding of the anti-competitive nature of... And then the FERC is entitled to carry that policy determination from order 1000 forward, and it mightily affects their thinking about individual cases. There's no presumption coming from MobileSphere now in light of 1000 in these kinds of cases. I certainly hate to disagree because obviously that favors the agency. The only reason the Commission went on to do something here is because ISO New England was in a unique position in that it had the 2004 orders where the transmission... No, no, I understand. There's nothing wrong with the Commission saying more, but Oklahoma seems to have a very strong statement about what 1000 means. Yes, I agree. And in particular that these contracts that have the right of first refusal, which reflects the common interest of the transmission owners, yes, the ISO, the independent system operator, was a party to the contract, but the Commission said in its MobileSphere determination that that doesn't tell us anything. I think, as actually the Oklahoma Court said, that doesn't reflect an adversarial... Right. Yeah, I'm agreeing with you. Yes, and that certainly both the Seventh Circuit, and particularly this Court, understanding that the right of first refusal provisions are anti-competitive in a way that is directly contrary to Order 1000. Yes. If the Court has no further questions, I'll see you the rest of my time. Thank you. Good morning, Your Honors. Paul Mazzina for the Intervenors, supporting the Commission on the Elimination of the Rights of First Refusal. I think it's important not to lose sight here, as Judge Edwards' question suggested, of the fact that what we're talking about is an agreement between competitors to exclude competition. That's something that the Commission has found, and this Court has found, doesn't have any of the basic characteristics that justify applying MobileSphere. And I think that's important to this Court's analysis for three reasons. First, as you know, we've argued the Commission would not have had discretion to uphold these contracts after South Carolina and after Oklahoma gas, based on a heightened Mobile Sierra standard. I think that's right, and I think that's an alternative basis on which you could affirm. There's no Chenery problem, obviously, with saying that the Commission reached the right result as a matter of law, without embracing all of its reasoning. But second, at a minimum, if we're in a world where the Commission is doing Mobile Sierra as a matter of discretion, I think that the Court's review has to be especially deferential. And I like the way Judge Millett put it at the oral argument in Oklahoma gas, where she said if we're doing this based on discretion, we shouldn't even really call it Mobile Sierra. We should call it something else. We should call it Mobile Sierra Prime. Because it's really the Commission's interpretation of what sort of public interest showing should be required under the just and reasonable standard in this particular context. So I think extra deference is appropriate. But my question is why do we need to reach any of that? I mean, you won. Yes, I agree, and that comes to my third point. I think the public interest finding under any version of Mobile Sierra is amply supported. When you're dealing with this kind of facially anti-competitive contract, which the Court has already agreed, as you're supposed to put it, almost resembles a cartel, it's really not clear what more the Commission can or should have to do. You know, when you have a party like my client saying, we'd like to compete, we think we can do better, we can do better with these projects, do them more cost effectively, sort of economics 101 to say they should be given a shot and that's going to benefit consumers. I see my time is up. If there are no further questions. Thank you, Your Honors. Thank you, Counsel. Okay. Okay. Mr. Atkin. Counsel, I think you had no time left, but we'll give you a minute. Oh, I apologize, Your Honor. I thought I had reserved one minute. I apologize. Just quickly to address the question of whether or not Oklahoma Gas and Electric is dispositive, we believe it is not. This is a case where FERC had afforded Mobile Sierra treatment to the contract provisions in 2004. They concluded in the orders below that they must be bound by a prior application of Mobile Sierra. So, in fact, this is a case where they must meet what FERC itself concedes is a heightened standard. We also know that Texaco tells us that the public interest finding to address Mobile Sierra is different and more exacting than the standard for making just a generic rulemaking finding. Again, the thing you should really be focusing on is the fact that there is ample evidence that the contract rights, retention of the contract rights, furthers the public interest, and elimination of them would harm the public interest. And we should be troubled that FERC did not address this in its orders. And for that reason, we ask for a remand. Thank you. Your Honors, FERC cites the rehearing order as providing the clarity that petitioners are seeking here regarding project selection. Yet that rehearing order lacks the clarity that's in FERC's brief on that issue. And curiously, in paragraph 126, the first brief wholly fails to grapple with the operative sentence there, which is we clarify that if the system operator does not find that there is a more cost-effective or efficient project, we need not select. It never addressed that sentence. And as our brief demonstrated, that sentence drives the conclusion that a substantive outcome will result from this process, whether the selection of a regional project or a local project. And furthermore, Your Honors, the current rules that are in effect now are based on the system operator's reading of FERC's order as requiring project selection as is reflected in the system operator's rehearing request. And just on project selection, Your Honor, I just underscore what I stated at the outset, which is it appears that the parties don't disagree that the states can play an appropriate role in the valuation process. And that would be an issue that we would seek to address on remand. So if there was an opinion issued from this court that said we read for it not to be saying that this controls substantive results, then you don't have any concern, right? In other words, we just disagree with your reading. You're reading it very tightly and narrowly. That's not the way I read it. And so if we read it the way you say their brief says it, then you have no issue. You're done, right? You should say, sure, I'm happy. Yes, if you read it the way that we're reading it. It doesn't control the substantive results. It certainly doesn't look like what they're doing. Maybe you're right. If you get an opinion that says that, then you can tell everyone you won that issue. I mean, I just don't see it. Isn't an opinion better than a remand? Right. You have it in an opinion that says it. You're done. You did it, right? Your Honor, we would obviously be very happy with that. The one point I would make is the rules that are in effect currently are based on the system operator's reading. Well, then they would have to rethink what they've been doing. Yes, that's what we want, the rules to be revised. Don't resist goodness. With that, Your Honors, I'll conclude. Thank you for your time. Very good. Thank you, Counsel. The case will be submitted.
judges: Brown, Wilkins, Edwards